Receipt #0629963

ORIGINAL

FILED
MAY 31 2005
U.S. COURT OF FEDERAL CLAIMS

ECF IN THE UNITED STATES COURT OF FEDERAL CLAIMS

**STERLING SERVICES, INC.,**

**Plaintiff,**

**vs.**

**UNITED STATES OF AMERICA, DEPARTMENT OF AIR FORCE,**

**Defendant.**

**No.:** 05-587C

**Judge:**

## COMPLAINT

The Plaintiff, Sterling Services, Incorporated (hereinafter "Sterling") complains of the Defendant herein as follows:

## JURISDICTIONAL ALLEGATIONS

1. Sterling is a corporation organized and existing under the laws of the State of South Carolina, and is in the business of providing service contracting to the Federal Government, including providing services to aircrafts for the Department of Air Force.

2. The Defendant, the United States of America (hereinafter "Government"), is a Defendant in this action by virtue of the actions and omissions of its agency and instrumentality, the United States Department of Air Force (hereinafter "Air Force").

3. This case involves aircraft services provided by Sterling to the Air Force under Contract No. F04626-01-D-0001 (hereinafter the "Contract").

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1491 and 41 U.S.C. § 609.

5. Sterling has timely and properly pursued and exhausted its administrative remedies prior to instituting this action.

## GENERAL FACTUAL ALLEGATION

6. This Complaint involves five (5) claims requesting a total of $152,971.79 for additional costs incurred by Sterling as a result of the Air Force's unrealistic estimate of the work it anticipated under the Contract, and for work directed by the Air Force in connection with the Contract but for which no payment was made.

7. The Contract was awarded to Sterling on or around January 16, 2001. The Contract can be broken down into two components: (1) CLIN AA for transient aircraft (TA) services that included such things as aircraft management, arrival preparations, aircraft processing, minor maintenance, and departure preparation; and (2) CLIN AB-BC for wash services that included such things as wash preparation, washing, lubrication, de-icing, wash water clean up, and various emergency services.

8. The work for transient services under CLIN AA was based on a firm fixed price.

9. The work for aircraft washes under CLIN AB-BC was priced separately for each line item, and was a requirements type contract.

10. The Contract was awarded for the base period of one year, from February 1, 2001 through January 31, 2002, but none of the four (4) option periods were exercised by the Air Force.

11. The Contract includes FAR 52.217-8, Option to Extend Services, which provides that the Contracting Officer may require continued performance of any services required by the Contract for up to six (6) months by providing written notice to the contractor at least 15 days before the contract expires.

12. By letter dated January 9, 2002, the Air Force provided written notice of its intent to extend the Contract from January 31, 2002 until March 31, 2002 pursuant to FAR 52.217-8. The Air Force subsequently issued Unilateral Modification 03 extending the Contract from January 31, 2002 to March 31, 2002.

13. By letter dated March 14, 2002, the Air Force provided written notice of its intent to extend the Contract from April 1, 2002 until April 30, 2002 pursuant to FAR 52.217-8. The Air Force subsequently issued Unilateral Modification 04 extending the Contract from April 1, 2002 to April 30, 2002.

14. On April 30, 2002, the Air Force issued Unilateral Modification 06 extending the Contract from April 30, 2002 through July 31, 2002. The Air Force did not provide 15 days written notice of its intent to extend the Contract.

15. By letter dated May 15, 2003, Sterling submitted a claim designated as Claim #SSI-05, requesting payment of $52,940.30 for overhead and additional costs for aircraft washes during the initial Contract performance period.

16. By letter dated May 15, 2003, Sterling submitted a claim designated as Claim #SSI-06, requesting payment of $7,535.94 for overhead and additional costs for aircraft washes during the extended performance period from January 31, 2002 to March 31, 2002.

17. By letter dated May 15, 2003, Sterling submitted a claim designated as Claim #SSI-07, requesting payment of $23,139.34 for overhead and additional costs for aircraft washes during the extended performance period from April 1, 2002 to July 31, 2002.

18. By letter dated May 15, 2003, Sterling submitted a claim designated as Claim #SSI-08, requesting payment of $1,939.19 for additional costs relating to services directed by the Air

Force during the Contract period, as unilaterally extended, but for which no payment was received.

19. By letter dated May 16, 2003, Sterling submitted a claim designated as Claim #SSI-09, requesting payment of $67,417.02 for towing services that were not required by the Contract.

20. By letter dated June 3, 2004, the Air Force issued the Contracting Officer's Final Decision (Exhibit 1 attached hereto) denying each of the above claims submitted by Sterling.

**FOR A FIRST CAUSE OF ACTION**
(Breach of Contract/Modification of Contract)

21. The allegations set forth in the preceding paragraphs are repeated and realleged as fully as if said matters were set forth herein verbatim.

22. The Air Force modified and/or breached the aforesaid Contract in among other ways by: failing to provide realistic estimates upon which Sterling could base its bid; ordering a grossly different amount of work that could have reasonably been anticipated had the Air Force provided realistic estimates for the anticipated work; failing to pay Sterling for work performed as directed by the Air Force; and failing to provide the required notice to extend the Contract performance period.

23. As a direct and proximate result of the modifications and/or breaches of the Contract, Sterling has incurred actual damages in excess of $152,000.00 and is entitled to interest and attorney's fees as may be allowed at law.

**FOR A SECOND CAUSE OF ACTION**
(Breach of Implied Warranty Regarding Adequacy of Specifications)

24. The allegations set forth in the preceding paragraphs are repeated and realleged as fully as if said matters were set forth herein verbatim.

25. The Air Force was required in the solicitation to state a realistic estimated total quantity for the wash down services required in CLIN's AB through BC.

26. That Air Force failed to state a realistic estimated total quantity for the wash down services required in CLIN's AB through BC, with the estimates provided to bidders being grossly overstated, erroneous, and unrealistic.

27. As a direct and proximate result of the Air Force's failure to provide a realistic estimated total quantity for the wash down services required in CLIN's AB through BC, Sterling incurred additional costs and expenses in excess of $83,000.00 for which the Air Force is liable.

**WHEREFORE**, the Plaintiff prays for judgment against the Government for actual damages in excess of $150,000.00, interest, attorney's fees as may be provided at law, the costs of this action and such other and further relief as this Court deems just and proper.

**PEDERSEN & SCOTT, P.C.**

William A. Scott
775 St. Andrews Blvd.
Charleston, South Carolina 29407
(843) 556-5656

Dated this 26th day of May, 2005.

**DEPARTMENT OF THE AIR FORCE**
60TH CONTRACTING SQUADRON (AMC)

CERTIFIED

3 June 04

MEMORANDUM FOR STERLING SERVICES, INC.
PO BOX 5996
Columbia, SC 29250

FROM: 60 CONS/LGCB
350 Hangar Ave Bldg 549
Travis AFB, CA 94535

SUBJECT: F04626-01-D-0001 Claims SSI-05 through SSI-09 Contracting Officer's Final Decision

1. Contract F04626-01-D-0001 (the Contract) for Corrosion Control and Transient Alert Aircraft Services was awarded to Sterling Services Inc., (herein identified as Sterling) on 16 Jan 01. The Government declined to exercise Option Year I, but exercised its unilateral right to extend the term of the Contract for an additional two months from 01 Feb 02 through 31 Mar 02 and then again for an additional four months from 01 Apr 02 through 31 Jul 02. From 01 Aug 02 through 30 Sep 02, Sterling performed similar services under purchase order number F04626-02-M-0301. The pricing and contract type utilized in F04626-02-M-0301 differ from the contract type and pricing used in F04626-01-D-0001 and the changes incorporated into the Purchase Order have no bearing on the disputed contract F04626-01-D-0001.

a. The Contract required Sterling to perform transient aircraft and wash services at Travis AFB, California. The Contract can be broken down into two components: (1) transient aircraft (TA) services, and (2) wash services. Among other things, TA services includes aircraft management, arrival preparations, aircraft processing, minor maintenance, departure preparations. Wash services includes, wash preparation, washing (at different levels from partial to complete), lubrication, de-icing, wash water clean up, and various emergency services. The SOW, paragraph I.5, also specified that Sterling would be required to provide aircraft towing services to and from the primary wash location.

b. The basic CLIN for TA services (CLIN AA) was priced on a monthly basis. For a fixed amount each month, Sterling would provide all the TA services required at Travis AFB. The CLINs for the various wash services (CLINs AB – BC) were priced separately and were contracted for on a requirements basis, so Sterling was only paid for the actual wash services performed.

c. The Contract was issued as a commercial contract under FAR Part 12. As such, it incorporated FAR clause 52.212-4, Contract Terms and Conditions – Commercial Items. Since 52.212-4 contains its own changes clause at 52.212-4(c), the Contract intentionally did not incorporate FAR clause 52.243-1, Changes – Fixed Price. During the Contract performance period, including extensions, no changes were made pursuant to 52.212-4(c).

EXHIBIT
1

2. Claim SSI-05

a. Description of Claim. Sterling alleges that wash workload was lower than the estimates provided by the government during the period of 01 Feb 01 through 31 Jan 02. Wash workload was contracted on a requirements basis. Although this claim does not expressly refer to FAR 52.243-1, it amounts to a REA under FAR 52.243-1. Because of this reduced demand, Sterling submitted its claim number SSI-05 on 15 May 03 for the amount of $52,940.30, plus interest.

b. Pertinent Contract Clause(s).

FAR 52.216.21 was included in the contract F04626-01-D-0001. FAR 52.216-21(a), Requirements, provides the following:

> This is a requirements contract for the supplies or services specified, and effective for the period stated, in the Schedule. The quantities of supplies or services specified in the Schedule are estimates only and are not purchased by this contract. Except as this contract may otherwise provide, if the Government's requirements do not result in orders in the quantities described as "estimated" or "maximum" in the Schedule, that fact shall not constitute the basis for an equitable price adjustment.

c. Disputed Facts. Sterling alleges that the workload estimates were defective.

d. Undisputed Facts.

The estimates provided by the government at the time the solicitation was issued and the Contract was awarded were based on relevant and accurate data for Fiscal Year (FY) 99, which was provided by the previous contractor. The workload data provided by the government was clearly marked as an estimate. The contract was awarded as a commercial item contract and incorporated estimates that were clearly labeled to be FY 99 data. Sterling has provided no evidence to support that the incorporated estimates were improper, defective, or inaccurate, other than its unsupported assertions that its actual performance was in excess of the estimates. There was no guarantee that the estimates would turn out to be the same actual performance. So, even if Sterling's assertions about its actual performance is true, that in and of itself does not prove that the estimates were defective or inaccurate. Furthermore, Sterling has provided no evidence as to how it calculated its proposed pricing of CLIN 0001AA other than its bare, self-serving assertion that it was priced at the FY 99 level of service. Given the fact that Sterling was willing to enter into the Contract as a commercial items contract in January of 2001, including clause FAR 52.212-4, Contract Terms and Conditions – Commercial Items, but expressly not including FAR 52.243-1, Changes – Fixed Price, without proof to the contrary, the government must conclude that Sterling considered its pricing to be adequate at that time

e. Contracting Officer's Rationale.

There has been no allegation that the minimum orders were not met pursuant to FAR 52.216-19. Therefore, in accordance with the express terms of FAR 52.216-21, there is no basis for equitable adjustment for un-recovered overhead and/or costs on a firm fixed price requirements contract.

f. Contracting Officer's final Decision: based on the facts and analysis detailed above, Sterling's claim SSI-05 for $52,940.30 is without merit and is denied in its entirety.

3. Claim SSI-06

a. Description of Claim. This claim is the same as claim SSI-05, except that it is intended to cover the two-month extension period of 1 Feb 02 through 31 Mar 02. For that period of time, Sterling submitted its claim, SSI-06, on 15 May 03 in the amount of $7,535.94, plus interest. As with claims SSI-02 and SSI-03, SSI-06 also contains the additional allegation that the option to extend services was not properly exercised in accordance with FAR 52.217-8.A.

b. Pertinent Contract Clause(s). The same clauses discussed for claim SSI-05 are pertinent for SSI-06.

c. Disputed Facts. All the facts asserted for claims SSI-05 are also alleged by Sterling and applied to claim SSI-06 for the period of 1 Feb 02 through 31 Mar 02.

d. Undisputed Facts. The same facts relevant to claims SSI-05 are also relevant to claim SSI-06.

e. Contracting Officer's Rationale. Sterling's REA arguments in claim SSI-06 are identical to its arguments in claims SSI-05. Consequently, the government's rationale for its position on claim SSI-06 is the same as for claim SSI-05.

f. Contracting Officer's final Decision: based on the facts and analysis detailed above, Sterling's claim SSI-03 for $7,535.94 is without merit and is denied in its entirety.

4. Claim SSI-07

a. Description of Claim. This claim is the same as claim SSI-06, except that it is intended to cover the four-month extension period of 1 Apr 02 through 31 Jul 02. For that period of time, Sterling submitted its claim, SSI-07, on 15 May 03 in the amount of $23,139.34, plus interest.

b. Pertinent Contract Clause(s). The same clauses discussed for claim SSI-05 are pertinent for SSI-07.

c. Disputed Facts. All the facts asserted for claim SSI-05 are also alleged by Sterling and applied to claim SSI-07 for the period of 1 Apr 02 through 31 Jul 02.

d. Undisputed Facts. The same facts relevant to claim SSI-05 are also relevant to claim SSI-07.

e. Contracting Officer's Rationale. Sterling's REA arguments in claim SSI-05 are identical to its arguments in claim SSI-07. Consequently, the government's rationale for its position on claim SSI-07 is the same as for claim SSI-05.

f. Contracting Officer's final Decision: based on the facts and analysis detailed above, Sterling's claim SSI-07 for $23,139.34 is without merit and is denied in its entirety.

5. Claim SSI-08

a. Description of Claim. Sterling alleges that services were performed and received by the government without compensation during the period of 01 Feb 01 through 31 Jul 02. Sterling submitted its claim, SSI-08, on 15 May 03 in the amount of $1,939.19, plus interest.

b. Pertinent Contract Clause(s).

FAR 52.212-4(a) -- Contract Terms and Conditions -- Commercial Items
*Inspection/Acceptance*

c. Disputed Facts. Contractor alleges that the government failed to provide documentation supporting the wash services that were not accepted by the Quality Assurance Personnel.

d. Undisputed Facts.

i. The Contractor was paid in full, minus deductions for damage to government property, for all services the contractor successfully completed and invoiced for.

ii. In accordance with FAR 52.212-4(a), the government can refuse acceptance and deny payment for any service which does not meet the terms and conditions of the contract. The contractor is provided one opportunity to re-perform the un-acceptable service at no additional cost to the government.

iii. The standards for aircraft washes are identified in the SOW. The Surveillance Delivery Summary indicates that customer complaints will be used to identify unacceptable washes. Air Force Technical Orders provide an in-depth instruction for all wash and maintenance functions performed by the contractor.

iv. All unacceptable services were documented on AF Form 2420. These forms were provided to the contractor's on site manager. The contractor's on-site manager was given an opportunity to re-perform the unacceptable services. After re-performance, the disputed services were still not in conformance with the contract terms and conditions.

This failure was documented again and provided to the contractor's on-site manager on AF Form 2420.

v. Prior to submitting monthly invoices, the contractor's on-site manager met with the Quality Assurance Personnel and verified the number of aircraft washes performed. The number of washes the contractor billed for does not include washes that were not in conformance with the contract terms and conditions. The contractor's billable wash count does not include additional payment for re-performance of unacceptable washes. After verification the contractor's on-site manager submitted an invoice to the government for payment.

e. Contracting Officer's Rationale.

i. The contractor received full payment for all washes in conformance with the terms and conditions of the contract. There were no deductions to payment amounts requested on the contractor's invoice for un-acceptable performance.

ii. The Contractor was provided adequate notification and opportunity to re-perform un-acceptable washes. The contractor was provided adequate notification when the re-performance was unacceptable.

iii. The Contractor's on-site management acknowledged and concurred with all services that the government did not accept, as evidenced by the wash count and prices on the invoices submitted for payment.

f. Contracting Officer's final Decision: based on the facts and analysis detailed above, Sterling's claim SSI-08 for $1,939.19 is without merit and is denied in its entirety.

6. Claim SSI-09.

a. Description of Claim. Sterling alleges that the Government required Sterling to perform aircraft towing services that were not included in the contract. Sterling submitted its claim, SSI-09, for this item on 16 May 03 in the amount of $67,417.02, plus interest.

b. Pertinent Contract Clause(s). Contract F04626-01-D-0001 Statement of Work Paragraph I.5 titled "Aircraft Tow Service to and from Wash Location" states:

*The contractor shall perform tow preparation and tow transient aircraft and aircraft assigned to TAFB IAW applicable aircraft job guide and Technical Orders. Tow aircraft to primary wash location, Hangar 811. After washes, tow aircraft to the front of Hangar 809, 810, or flight line as per work order.*

The contractor was provided with a copy of the statement of work, including paragraph I.5, in both the solicitation and the resultant contract.

c. Disputed Facts.

i. The wash tow service for transient aircraft is included in the monthly price for CLIN 0001AA. Wash tow service for assigned aircraft is included in the individual aircraft wash prices for CLINS 0001AB through 0001BC.

ii. Sterling alleges that the government letter dated 5 Jul 01 letter, paragraph 3, RE: CLIN 0001AA shows the government's intent to make towing a separately priced line item.

d. Undisputed Facts. The contractor failed to provide written notice to the government concerning the inclusion of wash tows in transient alert and aircraft wash prices within 30 days after the start of the contract. The first evidence of written notification is dated 12 Jul 01, six months after the contractor started performance of work under the contract.

e. Contracting Officer's Rationale.

i. Aircraft wash tows were identified in the SOW and the schedule as part of transient alert and wash services the contractor was required to perform under the terms and conditions of the contract. The contractor had ample opportunity to raise any concerns regarding aircraft wash tows during the solicitation period. The government did not receive any notification from the contractor requesting clarification on aircraft tow wash during the solicitation period. The contractor never provided a written request for clarification until over six months after the contractor began performing work under the contract.

ii. The contractor failed to perform the tow and wash services in accordance with the terms and conditions of the contract as evidenced by government augmentation during the period of 01 Feb 01 to 30 Dec 02.

iii. The express terms of the 5 Jul 02 letter shows the government's intent to separate out the towing, but not at an increase in price, merely to identify the costs for different types of towing. However, the contractor failed to respond to this letter. In addition, this letter does not direct the contractor to perform any additional services without the issuance of a formal contract modification. This letter only informs the contractor to provide pricing for identified items but was never consummated as evidenced by contract modifications. No change was entered into pursuant to FAR 52.212-4(c) for this item.

f. <u>Contracting Officer's final Decision</u>: based on the facts and analysis detailed above, Sterling's claim SSI-09 for $67,417.02 is without merit and is denied in its entirety.

7. This is the final decision of the Contracting Officer. You may appeal this decision to the agency board of contract appeals. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the agency board of contract appeals [Armed Services board of Contract appeals, Skyline Six 5109 Leesburg Pike, Falls Church, VA 22041-3208] and provide a copy to the Contracting Officer from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number. With regard to appeals to the agency board of contract appeals, you may, solely at your election, proceed under the board's small claim procedure for claims of $50,000 or less or its accelerated procedure for claims of $100,000 or less. Instead of appealing to the agency board of contract appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C.§ 603, regarding Maritime Contracts) within 12 months of the date you receive this decision

Cora L. Armstrong
CORA L. ARMSTRONG
Contracting Officer